✓FILED _____ LODGED
_____ RECEIVED _____ COPY

DEC 0 4 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Steven A. Keiffer (pro se)
1725 W. Desert Willow Dr.
Cottonwood. AZ 86326
PH: 520-404-0321

## The United States District Court for the District of Arizona

Steven A. Keiffer

                plaintiff.

        v.

Edkey Sequoia Schools. Inc.

dba American Heritage Academy

                defendant.

Civil Action

No.  CV-25-08258-PCT-SMB

COMPLAINT

(Title VII Retaliation)

Demand for Jury Trial

## Jurisdiction and Parties

1. This is an action to recover damages for retaliation under Title VII of the Civil Rights Act of 1964 caused when Plaintiff was terminated for opposing sex discrimination at his employment site.

2. There is a federal jurisdiction under 28 USC Sec. 1343.

COMPLAINT. Page 1 of 12

3. Venue is appropriate in this court under 28 USC Sec. 1391.

4. Plaintiff, STEVEN A. KEIFFER, is a citizen of Yavapai county residing at 1725 W. Desert Willow Drive, Cottonwood, Arizona, 86326.

5. Plaintiff was employed by Defendant at its charter school in Cottonwood, the American Heritage Academy (Hereafter "A.H.A.") from July 14, 2021 to April 18/20, 2022. (Defendant first stated that Plaintiff was terminated on April 18, 2022. Defendant later claimed that the termination went into effect on April 20, 2022.)

6. Plaintiff was supervised at all times relevant to this case by A.H.A. principal Steven Doerksen. Doerksen, an employee of the Defendant, Edkey Sequoia Schools, Inc., acted as its agent and representative.

7. Defendant, EDKEY SEQUOIA SCHOOLS, INC., is an Arizona corporation headquartered in Maricopa county at 1460 South Horne, Mesa, Arizona, 85204. Defendant is a charter school management firm which manages over a dozen charter schools in Arizona. At all times relevant to this case, Defendant had over 500 employees.

8. Plaintiff filed a timely charge alleging retaliation with the Equal Employment Opportunity Commission on Feb. 2, 2023. Plaintiff received a right-to-sue letter on Sept. 5, 2025.

COMPLAINT, Page 2 of 12

## Overview

9. Plaintiff was terminated in a protected Title IX investigation meeting on April 18, 2022. Plaintiff was terminated in retaliation for: 1) opposing Defendant's sex discrimination practices, 2) opposing Defendant's suppression of sex discrimination complaints, and 3) requesting the proper investigation of such complaints.

10. Defendant's termination letter states that Plaintiff was discharged was for sending an email requesting the investigation of sex discrimination complaints. Defendant alleged that the email request was "irrational" and "insubordinate".

11. Defendant's termination letter faulted Plaintiff for "obsessing about incidents that have happened in the past" and faulted Plaintiff because "he isn't letting go of things". Because these "incidents … in the past" were the sex discrimination and toxic work environment which Plaintiff opposed, Defendant's words are a bald admission of retaliation.

## Plaintiff's State of Mind

12. Because Defendant accuses Plaintiff of being "irrational", some background is required to recreate Plaintiff's state of mind and earnestness in opposing sex discrimination. Events earlier in the year had a great impact upon his termination.

COMPLAINT. Page 3 of 12

13. During the 2021-2022 school year, ten out of A.H.A.'s fifteen female faculty members complained of sex discrimination. Plaintiff had information and belief Defendant's mishandling of these complaints contributed to the loss of 32% to 37% of the school's faculty in the middle of the school year.

14. Plaintiff personally spoke with eight of these female complainants. Most complained of Principal Doerksen's imposition on them of a discriminatory and demeaning work rule. The work rule derived an out-dated quasi-religious A.H.A. charter school founding principle which was that women were, by nature, subservient to men and in need of male governance. In its September 2021 articulation, the rule became something like: "It is woman's nature to obey [and not to complain]." Female faculty members claim that were silenced with that line and not allowed to make professional decisions about their own instruction. Several teachers filed a formal complaint with Defendant's human resource director and Title IX coordinator, Laurie Ainge.

15. Plaintiff will caution against drawing any hasty conclusions about Principal Doerksen from this second-hand information. A number of factors might have excused his conduct. What is relevant here is that female faculty complainants reported that Ainge's investigation made the situation worse. According to the complainants, either Ainge doesn't know how to conduct a Title VII/Title IX investigation or she intentionally mishandled their complaint to suit the needs of Defendant's corporate headquarters.

COMPLAINT. Page 4 of 12

16. Neighboring Edkey principal Colleen Kerr told Plaintiff that Defendant's home office had failed to give newly-hired Principal Doerksen the Title IX training it had promised him during the 2021-2022 school year. According to Kerr, adherence to Title VII/Title IX procedures was a low priority for Defendant that year. Plaintiff's experience was that it was difficult to find within the company sources of reputable information on proper Title VII or Title IX complaint handling procedures.

17. Plaintiff had information and belief that Ainge's practice of mishandling staff complaints was linked to and motivated by Defendant's desire to conceal evidence from a then-current Attorney General's investigation into allegations of enrollment data fraud.

18. Because of Ainge's mishandling of the sex discrimination complaint against Principal Doerksen, A.H.A. quickly lost four of its best teachers. The demoralizing effects on the staff were long-lasting and would have an impact on Plaintiff's termination.

**Plaintiff Becomes Involved**

19. On January 7, 2022, Defendant's Edkey Mentoring Program asked Plaintiff to perform a professional evaluation on teacher Tristan Rowe. Rowe had been at the center of the aforesaid sex discrimination controversies in September. The reading program which Rowe led suffered a major set back due to the loss of so many of the school's best

COMPLAINT, Page 5 of 12

teachers. During the brief conversation that Plaintiff had with Rowe on January 7, Rowe showed signs of cumulative trauma and 'persecution complex' tracing back to September. She paced back and forth nervously during the conversation and seemed angry. The source of her anger was difficult to ascertain but it definitely had to do with the reading program she led which had suffered such setbacks in the fall. When Plaintiff tried to offer constructive feedback on the reading program. Rowe quipped: "I'm sorry I didn't give you what you wanted last semester."

20. On March 3, 2022, Plaintiff reported Rowe's distress to Principal Doerksen and sought his guidance. On March 8, 2022, Plaintiff expressed opposition to the discriminatory work rule that had affected Rowe's program negatively. Doerksen told Plaintiff on March 8, 2022 that the best course of action was to forget Rowe's concerns altogether or, as Doerksen put it, to "flush it down the drain". Plaintiff complied with Doerksen's advice and instruction. From January 7, 2022 until Plaintiff's employment ended, Plaintiff never spoke with Rowe beyond occasional greetings uttered in passing and brief, work-related messages.

21. But as weeks wore on, Plaintiff began to observe that the resentments from last September weren't going away. Doerksen's prohibition of healthy staff communication had become a factor that sustained last September's hostile work environment. School morale was suffering. In late March, Rowe, for example, announced her resignation from the school with a vow that she would never teach again. (Rowe left her teaching post one week after Plaintiff's departure.)

COMPLAINT, Page 6 of 12

22. On or about April 2, 2022, Plaintiff sent an email to school leadership team member, Stephanie Van Gorp, asking that sex discrimination complaints on the campus be investigated properly. The email expressed dismay that rumor, allegations and complaints of sex discrimination were circulating about the campus without resolution. Plaintiff did not mention Rowe's case.

## The April 18, 2022 Title IX Meeting

23. On April 12, 2022, Doerksen entered Plaintiff's office on his own initiative and announced his support for a Title IX investigation meeting such as Plaintiff had proposed on April 2. The date of the meeting would be April 18, 2022. Doerksen narrowed meeting's topic to the concerns of Tristan Rowe.

24. To his own detriment, Plaintiff trusted Doerksen's description of the event as a Title IX investigation meeting. The four persons present in the April 18 meeting were Doerksen, Van Gorp, Rowe and Plaintiff. The initial discussion seemed harmonious. But Plaintiff was terminated abruptly and without warning or explanation five minutes into the meeting. The termination was performed in the manner of a pie-in-the-face stunt, a sadistic jest designed to make Plaintiff look foolish.

COMPLAINT, Page 7 of 12

25. Neither Doerksen nor Van Gorp could give a clear, non-retaliatory reason for terminating Plaintiff. They had apparently fallen victim to the information drought caused by Doerksen's March 8, 2022 ban on staff communication. This suppression of healthy staff discussion is precisely what Plaintiff had complained of in his April 2, 2022 email.

26. What is interesting about this case from a legal perspective is that Doerksen fraudulently billed the April 18, 2022 meeting as a Title IX meeting with the intention of firing Plaintiff in the meeting. This may be the only case in Title VII/Title IX litigation history where a protected meeting was weaponized and made to serve retaliatory purposes opposite from what it was intended.

27. Proof that Doerksen intentionally misled Plaintiff about the meeting's Title IX status comes from over 15 pieces of evidence. Most relevant here are admissions made by Doersken and Van Gorp that they bore a retaliatory animus toward Plaintiff before the meeting even started. Van Gorp claimed the meeting was about an undisclosed petty grievance which she claims to have had with Plaintiff. Van Gorp said she was surprised that Rowe's issues even came up in the meeting. The retaliatory deception of Doerksen and Van Gorp is undeniable.

COMPLAINT. Page 8 of 12

## Cover Up

28. Immediately after being fired. Plaintiff alerted Doerksen that Title IX meetings have protected status. Upon learning this. Doerksen ordered Plaintiff to sit in another room for the remainder of the meeting while Doerksen and Van Gorp quickly improvised a pretext that would justify his termination.

29. It is reported that Tristan Rowe broke into tears when Plaintiff was ordered to solitary confinement. Doerksen and Van Gorp fail to explain the source of her grief. Just like Plaintiff. Rowe had also been misled by Doerksen about the purpose of the meeting. Doerksen only allowed her to speak two sentences in the meeting before silencing her. Only when Plaintiff was fired did Rowe comprehend the meeting's true retaliatory purpose. Rowe had not wanted the meeting to end this way.

30. While Plaintiff was banished from the meeting and sitting in solitary confinement. Doerksen and Van Gorp concocted the story that Plaintiff posed a safety risk to the school. Doerksen falsely accused Plaintiff of being "defiant" and "combative". Doerksen filed a police report shortly afterward falsely stating that Plaintiff's April 2. 2022 email to Van Gorp had been "harassing".

**Termination Letter**

31. Doerksen's termination letter claimed that Plaintiff's April 2, 2022 email request for sex discrimination investigations was the primary reason for Plaintiff's termination. Doerksen labeled Plaintiff's email "harassing", "insubordinate" and "irrational". Beyond these bare words, Doerksen failed to explain what – if anything – was wrong with Plaintiff's request. Plaintiff was neither "harassing" nor "insubordinate" nor "irrational".

32. Doerksen further faulted the Plaintiff for "obsessing about incidents that have happened in the past". Doerksen's words constitute a bald admission of retaliation and are consistent with his unhealthy practice of suppressing staff discussion.

**Denial of Due Process**

33. Plaintiff was never given an opportunity to respond to any of the charges made against him. If there had been any truth to the charges, they should have been brought up in the April 18, 2022 meeting. That's what the April 18, 2022 meeting was partly for. The meeting was not used this way. On the contrary, moments before Plaintiff was fired, Principal Doerksen told Plaintiff that no member of the staff had anything negative to say about him. (This can be seen in Doerksen's testimony.)

COMPLAINT, Page 10 of 12

34. Several days after Plaintiff was terminated. Principal Doerksen instructed two staff members to search Plaintiff's school files for the April 2. 2022 email and confiscate it. This was done solely to handicap Plaintiff's ability to prove his innocence.

35. Defendant's human resource director. Laurie Ainge. denied Plaintiff's right to a wrongful termination hearing.  Ainge declined Plaintiff's repeated requests for copies of his email correspondence even when she had easy access to Plaintiff's company email account.

36.  As a result of the aforesaid retailiation. Plaintiff has suffered a loss of income. humiliation. emotional upset. damage to his reputation. disruption of his personal life loss of enjoyment of life. and loss of physical health.

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

COMPLAINT. Page 11 of 12

## Prayer For Judgment

WHEREFORE, the Plaintiff requests that this Court:

    a) declare that the Defendant is guilty of retaliation

    b) reinstate Plaintiff to a position of employment at Edkey

    c) award the Plaintiff compensatory damages plus interest

    d) award the Plaintiff court costs and attorneys fees

    e) award the Plaintiff any other relief the Court deems equitable

Plaintiff demands a trial by jury.

Plaintiff prays leave of Court to allow him to amend this complaint within 21 days of its filing.

Dated December 4, 2025

The signature which follows states to the Court that the plaintiff in good faith believes these facts are true and soundly based in law and not interposed for any inappropriate purpose.

Respectfully submitted,

_____ (pro se)

1725 W. Desert Willow Dr.

Cottonwood, AZ 86326

folklifeproject@yahoo.com

PH: 520-404-0321

COMPLAINT, Page 12 of 12

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0002
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/05/2025

**To:** Mr. Steven A. Keiffer
1725 West Desert Willow Drive
COTTONWOOD, AZ 86326
Charge No: 540-2023-00221

EEOC Representative and email:    MARLETT AVILA
EQUAL OPPORTUNITY INVESTIGATOR
MARLETT.AVILA@EEOC.GOV

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 540-2023-00221

On behalf of the Commission,

Melinda Caraballo
District Director

**Cc:**
Amanda C Boynton
Ogletree Deakins
2415 E CAMELBACK RD STE 800
Phoenix, AZ 85016

Laurie Ainge
Edkey, Inc.
1460 S Horne 1460 S Horne
Mesa, AZ 85204

NA NA
2030 E CHERRY ST
COTTONWOOD, AZ 86326

L. Eric Dowell
Ogletee Deakins
2415 E CAMELBACK RD STE 800
Phoenix, AZ 85016

Please retain this Notice for your records.